## Case No. 16,562.

### UNITED STATES v. TWENTY-FIVE BARRELS OF ALCOHOL.

[3 West. Jur. 15; 10 Int. Rev. Rec. 17.]

District Court, E. D. Missouri. Oct. Term, 1868.

SEIZURES UNDER REVENUE LAWS—INFORMATIONS OF FORFEITURE—PLEADING—VERIFICATION.

1. No form of general issue is allowable to a libel, information, or libel of information, under the rules of the federal courts; but each article therein should be specially met by a distinct article in the answer, admitting or controverting its allegations, or admitting part, and controverting part, as the case may be.

2. The conclusion should not be to the country, but a simple prayer for restitution.

3. Where the claimant "denies" the allegations of the libel, etc., and swears to his denial, no proper issue is made under oath. The verification should apply to a statement that the allegation is or is not true, as the case may be.

4. The belief of the party should be expressed in the form of verification, not in the body of the pleading.

5. Rules 22, 26, 30, 34, and 36 of the supreme court of the United States construed, and certain passages in Conkling's Treatise criticised.

This was a case brought by the United States against twenty-five barrels of alcohol, in a case of seizure and forfeiture on information filed by the United States district attorney. The proceeding was in rem. The different grounds for forfeiture were set forth in separate articles of information, charging different causes of forfeiture under the several provisions of the internal revenue law. The claimant put in the general issue as to the whole information, and then separately traversed the several articles—the language used being, and as to article so and so, the claimant "denies." Then followed the denial of the several averments of the articles of information. To this oath was made, and the question was raised whether in the first place the general issue was sufficient, and second, whether the language used of "denying" the averments of the article, and swearing to the "denial" was a proper pleading. The answer was excepted to on the part of the government as being informal and insufficient.

J. W. Noble, U. S. Dist. Atty.

Taussig & Kellogg, for claimants.

TREAT, District Judge. The court knows how the difficulty has grown up with regard to pleadings in these matters. Parties pleading have been misled, in part by Conkling's Treatise, and in part by this court, when, at an early day, these matters were first brought before it, relying upon what Conkling had laid down as the rule. Hence, in the Law

Register [1] there is a dictum in a particular case, to which the attention of the court has been called, following Conkling's original text with citations, in addition to Conkling, which, on examination, are found to have nothing to do with the question. Conkling, in his text, page 590, lays down the doctrine in this way: (It is under the general head of cases of seizure for violation of laws of the United States where forfeiture follows.) "It is very rare in the description of actions of which we are treating, and especially in that class of them (by far the most numerous) which arises under the revenue laws, that any other defense than that of a direct denial of the charges of illegal conduct set forth in the libel or information is interposed; the only question in general being whether the illegal acts charged have in fact been committed. In all such cases the only appropriate answer or plea is one which is equivalent to the general issue in personal actions. When the libel or information alleges several distinct offenses or causes of forfeiture, the usual practice is to traverse each one of them. But by a rule of the district court of the Southern district of New York, it is provided that instead of a traverse of each separate cause of forfeiture, the claimant may plead as a general issue, 'that the several goods in the information mentioned did not, nor did any part thereof, become forfeited in manner and form as in the information in that behalf alleged.'" Then he goes on to comment on that rule with approbation, stating that a similar practice had grown up in the Northern district of New York, and as it appears by the Law Register, in the district of Wisconsin.

In the case which is reported in the Law Register, that form used in the Southern district of New York was adopted, but if the counsel will turn to page 884 of Conkling's Treatise they will find the following: "Before the promulgation by the supreme court, in 1845, of the rules and practice in cases of admiralty and maritime jurisdiction, very great diversity is understood to have prevailed in the different districts, and to a considerable extent also in the same districts, in the phraseology employed in framing claims and answers in cases of municipal seizure. In the Southern district of New York, with a laudable view, doubtless, to greater simplicity, it was by the one hundred and eighty-ninth rule of the district court declared that, 'instead of a traverse, etc.' (as read before). Under that rule the practice was to combine the claim and answer in one and the same very summary and brief pleading, and in the Northern district of New York, where there was no express general rule upon the subject, a similar practice prevailed to some extent without objection. In the appendix to the first and second editions to this work, a form was accordingly given for this

mode of pleading. It was also mentioned in the body of the work as admissible, and the brief observations upon it here alluded to were, through inadvertence, reprinted in the present edition, the necessity of correction not having been seasonably thought of. But, by the rules of admiralty practice above mentioned, this form of pleading, at least in cases which, by reason of the place of seizure, are of admiralty jurisdiction, must, it is presumed, be considered to be forbidden, and therefore no longer admissible; and, although the rule does not, in terms, embrace cases of the opposite description, a just regard to consistency will doubtless insure its application to them also." The particular rules alluded to as adopted by the supreme court are the twenty-sixth and twenty-seventh (to which reference will be made in a moment). He says: "The rules being obligatory and their language explicit, they will doubtless lead to a greater degree of uniformity of practice. It will readily be perceived that, unlike the twenty-second rule, they have no particular reference to cases of municipal seizure, but that, on the contrary, they were probably framed with a somewhat more especial view to suits by private persons; and although the twenty-sixth rule requires of the claimant a stipulation with sureties, it may well be doubted whether it ought to be considered as having been designed to supersede and displace the bond exacted by the eighty-ninth section of the collection act of 1799." If you will turn to the rules of the supreme court, in connection with those comments, you will find that his (Conkling's) text was written prior to the adoption of those rules. The district courts might then make specific rules to govern practice in them respectively, and the Southern district court of New York adopted what amounted to a general issue in these actions on municipal seizures; and it seems that there was, to some extent, similar modes of pleading and practice pursued elsewhere. That mode of pleading and practice rested on the authority of that court to make rules therefor. But when congress empowered the supreme court to prescribe rules for practice and pleading in all cases in equity, admiralty and common law, the action of that court superseded such district rules as were in conflict therewith. Now rule XXII. of the supreme court reads thus: "All informations and libels of informations upon seizures for any breach of the revenue, or navigation, or other laws of the United States, shall state the place of seizure, whether it be on land or the high seas, or on navigable waters within the admiralty and maritime jurisdiction of the United States, and the district within which the property is brought, and where it then is." The necessity for that is obvious. In the first place whether it should be tried on the instance side of the court in admiralty, or exchequer side as at common law, depended on the place of seizure; hence it became necessary that the information, or libel of in-

---

[1] [See U. S. v. Six Fermenting Tubs, Case No. 16,296.]

formation should give the means of determining the jurisdiction. That language is used with precision. An "information" is one thing and a "libel of information" is a very different thing, and a "libel" simply is still a different thing. An "information"—and we suppose the supreme court of the United States is using technical terms with due regard to their legal signification—an "information" is a proceeding against property liable to seizure and condemnation where these proceedings fall on the exchequer or common law side of the court. The old mode of proceeding as you will find in all the text-books and authorities on this subject — I mean as to modes of pleading—was very much like a declaration, where each cause of action was set out in a distinct count, subject, of course, to all the rules governing such technical modes of pleading. "A libel of information" is, of course, for the same cause of forfeiture where the seizure is on water. The information, technically speaking, is a cause of forfeiture, where the seizure is on land, and the case falls on the exchequer side of the court; a libel of information is where the seizure is on water, and falls on the instance side of the court. Now, a libel pure, of course, is a matter in admiralty, and falls necessarily either on the instance side, or the prize side of the court, as the case may be. Now then, the twenty-second rule, after requiring that each different pleading, as the case may be, shall state whether the seizure was on land or water, in order that the court may jurisdictionally proceed as the law requires, goes on to say: "The information or libel of information shall also propound in distinct articles the matters relied on as grounds or causes of forfeiture, and aver the same to be contrary to the form of the statute," etc., concluding with the prayer there set out. When the pleading was thus required to be done by articulation instead of the old common forms of counts, it was brought within the general modes used for libels in admiralty, and so in this particular case the pleader adopts proceedings by articulations, dropping the old form of common law pleadings as used in separate counts. It saves—and that evidently was the object of the supreme court of the United States—the pleader from needless repetition in connection with each of the several causes of forfeiture. The first proceeds to a general averment which is applicable all the way through to each articulation, as mere articulations, and not simply counts. Now, the mode of framing a libel of information, then, would follow properly the modes prescribed for a libel, for, though it be true that in rule twenty-second the requisites of a libel are stated, and nothing said about an information or a libel of information; yet, when you come to another rule you will see, necessarily, similar modes of pleading should be adopted. The rule for a libel is—after stating the nature of a case—it shall "propound and articulate, in distinct articles, the various allega-

tions of fact upon which the libellant relies in support of his suit, so that the defendant may be enabled to answer distinctly and separately the several matters contained in each article, and it shall conclude with a prayer, etc." Rule XXVI. speaks of "suits in rem." Now, having previously observed the distinction between the various suits in rem, and between libels in rem, and libels in personam, rule twenty-six makes a general rule applicable to all proceedings in rem. It says: "In suits in rem, the party claiming the property shall verify his claim on oath or solemn affirmation, stating that the claimant, by whom or in whose behalf the claim is made, is the true and bona fide owner and that no other person is the owner thereof. And where the claim is put in by an agent or consignee, he shall also make oath that he is duly authorized thereto by the owner; or if the property be, at the time of the arrest, in the possession of the master of a ship, that he is the lawful bailee thereof for the owner. And upon putting in such claim, the claimant shall file a stipulation, etc." Rule XXX. is: "In all cases where the defendant answers." Now technically of course there could be no "defendant" in these matters except in cases in personam. "In all cases where the defendant answers, but does not answer fully and explicitly and distinctly to all the matters in any article in the libel, and exception is taken thereto by the libellant, and the exception is allowed, the court may by attachment compel the defendant to make further answer thereto," etc. Rule XXXIV. reads: "If any third person shall intervene in any case of admiralty and maritime jurisdiction in rem, for his own interest, and he is entitled, according to the course of admiralty proceedings, to be heard for his own interest therein, he shall propound the matter in suitable allegations, to which, if admitted by the court, the other party, or parties, in the suit may be required, by order of the court, to make due answer thereto," etc. Rule XXXVI.: "Exceptions may be taken to any libel, allegation, or answer, for surplusage, irrelevancy, impertinence, or scandal."

How, then, is the pleader to meet the allegations in an information? The original pleading having been by articulation, the issues should take the form of an answer instead of a plea proper. Having taken the form of an answer, rule thirty-six subjects it to the same principles applying to an answer in admiralty. "Exceptions may be taken to any libel, allegation or answer. for surplusage, irrelevancy, impertinence, or scandal." Which mode of proceeding belongs to equity or maritime cases, in contradistinction to law cases. unless you bring into law cases on the exchequer side of the court, modes of pleading which are prescribed for admiralty cases.

The whole matter seems then, without a careful analysis of all the rules of the supreme court on the subject, to be left in some doubt

as to what is required to be done in the case of an answer to an "information." But such an analysis of the various rules prescribed by the supreme court shows that the design of the court was to have a uniform mode of pleading in the three classes of cases, informations, libels of information, and libels pure. The only reason for a difference between an information and a libel of information pertains to the jurisdiction of the court, or the side of the court on which the case should be tried. If the seizure be on water, and consequently the cause is triable by the court without the intervention of a jury, as a maritime cause, the rules pertaining to admiralty and maritime causes must be followed all the way through, but why, when the seizure for the same causes of forfeiture happens to throw the case on the exchequer side, should there be an entirely distinct and different mode of pleading? No reason therefor really exists, and the supreme court seem to recognize the necessity of uniformity in these matters, and consequently framed these rules to cover all three of the classes. But, if there were any doubt about that matter, as the same power exists in this court to regulate its practice as exists in any other district court, this court, together with the district court for the Western district, caused to be framed rules, which, so far as these two courts are concerned, are the rules of practice in these matters, even if the New York rule as adopted by the Southern district court was not necessarily abrogated by the rules of the supreme court made subsequently to the adoption of the rule there, already referred to. No such rule, however, was adopted at any time; but this court in the exercise of the authority given it, adopted a different rule. Rule XIX. of this district court says: "A libel, information, petition, answer, or other pleading, must state plainly the facts upon which relief is sought or the defense put, without repetition, prolixity, or amplification of charges, and in articles properly numbered." If each article in the libel, or information, or libel of information is met by an article in the answer properly numbered in accordance to the requirements of the rule, then general issues become impossible; and that was the design, to bring down all of these cases to a distinct issue as to such matters as the parties really designed to controvert, so that the case might not be unnecessarily burdened with issues, about which really there could be no dispute if the parties acted conscientiously.

The supreme court requires an oath or verification, and so do the rules of the district court. Therefore, following the articulations of the libel, a defendant in pleading by answer should affirm, admit or controvert the allegations contained in each article, or admit part, and controvert part, as the case may be. The necessity for a formal conclusion, to which reference has been made, it will be seen from the views expressed by the court, does not exist. It is not putting one's self on the country, according to the form in ordinary common law matters, because the distinct issues are thus framed, and they may go to the country, or may not go to the country, in the technical sense of the term, depending upon the fact whether it is an information or libel of information. The same rules must obtain all the way through. The technical conclusion, if there be any for adoption in such cases, should be at the close of the answer to the various articles in the information, and that springs from the very nature of the proceeding. The cause being a suit in rem, there is no "defendant," properly speaking; any one within the rules of law, who has a right to appear and claim such property, may appear. He may appear first to dispute the causes of forfeiture alleged. Second, if the causes of forfeiture are found not to have existed, he may have a restitution of the res, or delivery thereof to him. He is, as all the books say in regard to it, and in principle it must necessarily be so, himself an actor, in the legal acceptation of the term, because he appears before the court that has custody of certain property, demanding of the court the delivery thereof to him, notwithstanding all the allegations made to the contrary, on the part of the government or otherwise. Hence so far as the conclusion is concerned, it would be the ordinary form of conclusion; "wherefore he prays that the said property may be delivered to him," a simple prayer for restitution.

Now, another point that necessarily follows from this. How do you meet, when you plead specially (for the rules intimated require that, not general issues)—how do you meet an allegation where it must be a sworn matter? For a person to swear that he "denies," when he does deny on the very face of the pleading, is to make the oath simply of no avail. How are you going to try that issue? Is it a matter of record, to be determined by inspection of the record? If the fact that a man denies a thing is of itself an end of the suit, no suit whatever could be maintained: and no one will pretend, of course, that any such absurdity exists. But a close analysis of the logic of pleading would show that such must be the conclusion of the law, or such modes of pleading are not to be tolerated. The question is not whether the party "denies." No such issue is to be heard or tried, but the question simply is, are the allegations made in the information true? That is all that is to be tried. Hence the form of the oath. He may come in and assert that it is not true—that makes an affirmative and a negative; and then, of course, if he has no direct knowledge, he may state that the statements made by him in the answer, are true according to his information and belief. There is where the information and belief should be stated. This is what the court wishes particularly to call the attention of the bar to. The pleadings must make issues. The pleadings are for no other purpose. We

care a great deal about the directness of issues therein made, as to the facts averred on the one side and controverted on the other. For illustration, it is not a direct meeting of the allegation by saying that the party believes so and so, but it is for the jury, if the cause goes to the jury, or the court if the case falls to the court without the intervention of the jury, not to determine what either party "believes," but what the "fact" is. Therefore, to make an averment that a party "believes" a thing, if you are to follow the close logic of pleading, would put in issue simply his "belief." That is not what the court is to try, but what is the fact.

Mr. Conkling, in the appendix to the latter editions of his treatise in which he corrects the original text which has misled so many persons, because different editions are in the hands of different parties, changes his forms, and properly so. The forms in the prior edition following the text would not be proper under the rules as prescribed by the supreme court, and hence, the view expressed already in regard to that matter, which this court would entertain, and try to enforce, irrespective of any such authority as he has laid down, is in all accord with the views of Judge Conkling, as to what is now the true practice. After stating what the general allegations should be in the informations or libel of information, he says: "It is very rare, however, that a prosecution is instituted against property not under actual seizure. In general, therefore, the fact of such seizure and of its continuance, is to be admitted as follows: That it is true that the said C. D. in the said libel named, did seize the said ship Juno, her boats, tackle, apparel, and furniture, and now holds the same in custody, as in the said libel is alleged and pleaded." That is the form of admission. Then you come to the causes of action proper: "That it is true that, etc., as in the first article of the said libel is alleged and pleaded." That is where an admission is made. "Or if the charge is untrue, then say that it is not true, that, etc., as in the first article of the said libel is untruly alleged and pleaded." And so all the way through the answer. The averment is that the charge made in a particular article is not true, if it is to be controverted; or if it is to be admitted, say "it is true," etc. Sometimes it happens that there are many matters in one articulation, which the party pleading for the claimant wishes to separate. Then he can state: As to so and so, they are true; as to other matters, they are not true. Or he may take still the third form, and may deny that they are any of them true except as hereinafter stated, and then begin and state what he alleges to be the actual truth in regard to them, which is simply following out the rules as they have been known for pleading in ad-

miralty. Conkling, it is true, seems to imply, in his new forms, that a party may controvert by this language: "It is true" (then he puts in brackets), "or that this respondent has heard, and he believes it to be true." And the same where he wishes to controvert the fact. From the views already expressed this court thinks that is not a correct rule. The simple logic of pleading will tolerate no such rule, especially where the answer is to be verified; and in the verification the party is not required to state of his own knowledge that what he has stated in the answer is true, but must state that it is of his own knowledge, or that he has been so informed, and that he believes it to be true. He must commit his conscience, so far at least as to frame an honest controversy as to the facts to be disputed or which should be investigated. The remarks thus made, without taking up these matters in detail as they appear in the answers, enable the pleaders to make the proper applications in detail.

One other matter, only, calls for comment. There is an affirmative matter set up by way of bar to the government's right of action in one of these cases. If what the pleaders intended to set up there affirmatively be true, of course, that property is not forfeited for any matter that occurred prior thereto, viz.: the adjudication of the court settling or passing upon the cause in rem. If there was such an adjudication in rem about that property, the purchaser thereunder has a complete title, free from all antecedent grounds of forfeiture. How that matter is, is of course known to the party, and should be pleaded with such distinctness as to enable the adverse party to meet the issue directly. The language there is very broad and general. True, it is stated that the proceeds were applied to the payment of the tax, and that the tax was paid out of the proceeds—while we know very well that that is not the way it is done, but what the party really meant was, and it was just as effective, that this property passed into the hands of the claimant at a judicial sale, and, if there was subsequently a misappropriation of the funds by the marshal, or an error of the court in the distribution of the funds, he had nothing to do with that; he received a perfect title of the property when he became the purchaser at that sale, the sale having been made under a decree in rem. That point I suppose he wishes to plead, and that matter will be determined mainly by a transcript of the record, which will probably settle it, unless it should be necessary to prove the identity of the property.

I will enter these exceptions then as sustained, without going into detail. It only requires, in many of them, instead of using the word "deny," the use of the phrase, "it is not true"; that is all.